UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>DZUNG AHN PHAM,<br>    Defendant. | Case No. 8:19-cr-00010-JLS-1<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA (Doc. 123) AND (2) DENYING GOVERNMENT'S EX PARTE APPLICATION FOR JUDICIAL FINDING OF BREACH OF PLEA AGREEMENT (Doc. 141)** |

      This matter is before the Court on Defendant's Motion to Withdraw His Guilty Plea. (Doc. 123.) The matter is fully briefed. (*See* Docs. 138 (Opp.) & 142 (Reply).) Also before the Court is the Government's related Ex Parte Application for a Judicial Finding that Defendant Breached His Plea Agreement. (Doc. 141.) The Court deems this matter appropriate for decision without oral argument and therefore VACATES the April 14, 2023 hearing on the matter. As set forth herein, the Court DENIES the Motion to Withdraw Guilty Plea and DENIES the Government's Ex Parte Application for a finding that Defendant breached the plea agreement.

**I.    BACKGROUND**

      On January 16, 2019, Defendant, a physician, was indicted on six counts of distribution of oxycodone, hydrocodone, and amphetamine salts in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(C). (Doc. 22.) Just over a year later, on February 12, 2020, Defendant was charged with a co-Defendant in the First Superseding Indictment ("FSI") of conspiracy to distribute the same three controlled substances, along with additional drugs, in violation of 21 U.S.C. § 846. (Doc. 43.) Defendant was also charged with twenty counts of distribution of oxycodone and hydrocodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (*Id.*) Defendant is charged with writing prescriptions for controlled substances "outside the usual course of professional practice and without a legitimate medical purpose." (*Id.* at 5.)

On September 21, 2022, Defendant entered into the Plea Agreement in this case (Doc. 78), and on October 7, 2022, Defendant entered a plea of guilty (Doc. 91). The guilty plea was limited to the conspiracy charge. (*See* Plea Agreement at 3.) As a condition of the plea, Defendant was required to admit, and in open court did admit, to the factual basis underlying his guilty plea. Specifically, Defendant admitted to a conspiracy to "knowingly and intentionally distribute . . . controlled substances . . . while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose." (Plea Agreement at 5-7.) Defendant admitted to prescribing over 151,000 pills outside the course of professional practice and without a legitimate medical purpose, admitted to prescribing on multiple occasions to known addicts, admitted to prescribing controlled substances to a non-patient, and admitted to prescribing controlled substances in exchange for cash and insurance payments. (*Id.*)

## II.   LEGAL STANDARD FOR WITHDRAWAL OF GUILTY PLEA

Federal Rule of Criminal Procedure 11(d) allows for the withdrawal of a guilty plea under certain circumstances. Relevant here, the "defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Under this Rule, a defendant may withdraw his guilty plea where an intervening change in the law represents a "marked shift in governing law that gives traction to a previously foreclosed or unavailable argument may operate as a fair and just reason to withdraw a

guilty plea." *United States v. Ensminger*, 567 F.3d 587, 592 (9th Cir. 2009). But where such intervening law neither "alter[s] the legal landscape," nor "overrule[s] precedent," it does not provide a basis for withdrawing a guilty plea. *Id.* (internal quotation marks omitted). Moreover, "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements," the requirement that a guilty plea be made "voluntarily, knowingly, and intelligently . . . is not met[,] and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

### III. MOTION TO WITHDRAW PLEA

Defendant contends that he was not adequately apprised of the intent necessary to commit the offense to which he pleaded guilty. Specifically, he contends that, after *Ruan v. United States*, 142 S. Ct. 2370 (2022), "knowingly issuing a prescription outside of the ordinary course of professional practice and not for a legitimate medical purpose is not enough to sustain a finding of guilt under § 841." (Mot. at 4.) He argues "the government was required to prove his specific intent to act in a manner not authorized by his DEA registration." *Id*. at 7. Defendant argues that the Plea Agreement misstated the necessary *mens rea*; accordingly, Defendant's guilty plea was not knowing or voluntary, and the Court should allow him to withdraw it.

But Defendant's reading of *Ruan* misses the mark by ignoring the fact that the Supreme Court's decision equates "lack of authorization" with conduct "outside of the ordinary course of professional practice and not for a legitimate medical purpose." Indeed, *Ruan*'s opening paragraph notes that a physician's "authorization" is limited to those instances in which the physician prescribes a controlled substance "for a legitimate medical purpose" and where the physician "act[s] within the usual course of his [or her] professional practice." *Ruan*, 142 S. Ct. at 2374 . Specifically, at the outset, the *Ruan* Court noted:

> A provision of the Controlled Substances Act makes it a federal crime, except as authorized, for any person knowingly or intentionally to manufacture, distribute, or dispense a controlled substance, such as opioids.

3

> Registered doctors may prescribe these substances to their patients. *But, as provided by regulation, a prescription is only authorized when a doctor issues it for a legitimate medical purpose acting in the usual course of his professional practice.*

*Ruan*, 142 S. Ct. at 2374-75 (cleaned up; emphasis added). The issue in *Ruan* was not a dispute about the definition of "authorization," it was, as Defendant seems to recognize, about the necessary *mens rea* for a conviction. The decision settled the debate about whether § 841(a)'s "knowingly or intentionally" *mens rea* requirement applies only to the statute's *actus reus* ("manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance") or also to the 'except as authorized' clause at the beginning of the provision by holding the latter. In short, *Ruan* held that a defendant may *not* be convicted for issuing a prescription without a legitimate medical purpose and outside the usual course of professional practice *unless* the defendant *knew* or *intended* to act without a legitimate medical purpose and outside the usual course of professional practice.

But this debate had already been resolved in the Ninth Circuit. Specifically, in *United States v. Feingold*, 454 F.3d 1001, 1008 (9th Cir. 2006), the court observed:

> Simply put, to convict a practitioner under § 841(a), the government must prove (1) that the practitioner distributed controlled substances, (2) that the distribution of those controlled substances was outside the usual course of professional practice and without a legitimate medical purpose, and (3) that *the practitioner acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice.* In other words, the jury must make a finding of intent not merely with respect to distribution, but also with respect to the doctor's intent to act as a pusher rather than a medical professional.

*Id.*; *cf. Ruan*, 142 S. Ct. at 2374-75, 2382 (requiring the prosecution prove "that a defendant knew or intended that his or her conduct was 'unauthorized'" where "authorized" means

4

the drugs were prescribed "for a legitimate medical purpose [by a prescriber] acting in the usual course of his professional practice'").

Thus, as to the required intent for the crime to which Defendant pleaded guilty, established Ninth Circuit law is consistent with the holding in *Ruan*: A licensed prescriber acts outside the scope of his authorization where he intends to prescribe controlled substances outside the course of his professional practice and without a legitimate medical purpose. And an intent requirement consistent with *Feingold* and *Ruan* was expressly charged in the FSI and admitted to in the Plea Agreement and at the hearing on the change of plea.

Here, the Government charged Defendant's intent to act without legitimate medical purpose and intent to act outside the usual course of medical practice. (*See, e.g.*, FSI ¶ 12 (alleging that Defendants "conspired with each other to knowingly and intentionally commit [violations of § 841(a)(1) and (b)(1)(C)] *while acting and intending to act outside the usual course of the professional practice and without legitimate medical purpose*") (emphasis added).) Defendant expressly admitted this intent several times in the Plea Agreement. (*See, e.g.,* Plea Agreement at 7 (admitting as a factual basis for the plea that when he wrote prescriptions for in excess of 151,000 pills of oxycodone, hydrocodone, and amphetamine salts, he "acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice and without a legitimate medical purpose").) This admission is consistent with the holding in *Ruan* regarding the *mens rea* necessary to overcome the "authorization exception" of § 841. *See Ruan*, 142 S. Ct. at 2374-75, 2382. And during the plea colloquy, the Court satisfied itself that there was a sufficient factual basis as to the intent element.

The final issue is whether the Plea Agreement's description of the "nature of the offense" justifies a withdrawal of the guilty plea. In describing the substantive offense underlying the conspiracy charge to which Defendant was pleading, the Plea Agreement reads as follows:

> (1) beginning on a date unknown and continuing to on or about December 17, 2018, there was an agreement between two or more persons to distribute controlled substances, including oxycodone, hydrocodone, and amphetamine salts, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C); (2) the distribution of the controlled substances were outside the usual course of professional practice and without a legitimate medical purpose; and (3) defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

(Plea Agreement ¶ 4.) The Court finds that the natural reading of the language of the Plea Agreement reflects an acknowledgment that the Government was required to prove that Defendant knowingly and intentionally agreed to distribute controlled substances outside the usual course of professional practice and without a legitimate purpose. At the plea hearing, in addition to reviewing the language of the Plea Agreement, the Court inquired of the Defendant as to whether he had discussed the elements of the charge with his attorney, and he confirmed that he had. As *Feingold* had been the law of this circuit for over 16 years before the plea was entered, the Court presumes, based on this record, that Defendant's counsel—who stood next to Defendant as he responded to the Court's questions—had advised him of the proper intent requirement. *See Stumpf*, 545 U.S. at 183 ("[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel.") Finally, as noted above, Defendant admitted to engaging in conduct that supports every element of the offense, including the intent element.

IV.   **EX PARTE APPLICATION**

The Government contends Defendant breached the Plea Agreement by contesting facts agreed to in the Plea Agreement and failing to be truthful at all times with the Court. (Ex Parte App. at 3.) It also cites to a provision that requires Defendant to abide by all agreements regarding sentencing. (*Id.*)

Here, Defendant's Motion to Withdraw implicates the legal conclusions to be drawn from his factual admissions. Defendant does not, for example, wholly disclaim that he "acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice and without a legitimate medical purpose." (*Compare* Plea Agreement ¶ 10 *with* Doc. 142-1, Pham Reply Aff. ¶ 4 ("I was not informed that the government would have to prove my subjective knowledge or intent as it related to lack of authorization to write the prescriptions.").)

Although the Court does not find a breach, it notes that this is a very close call. Defendant teeters on the edge of a breach by hedging on this point in a manner designed to dovetail with his legal argument. Defendant now states: "I knew prescriptions were outside the scope of general practice and for purposes that other doctors might not deem legitimate." (Pham Reply Aff. ¶ 4.) This is a recharacterization of Defendant's admissions; it is not consistent with the Plea Agreement or the plea colloquy, and it is as untenable as his legal argument.[1] First, Defendant changes "professional practice" to "general practice" and "without legitimate purpose" to "purposes that other doctors might not deem legitimate," thereafter disclaiming he admitted his subjective intent. But the charging language (and the language of the Plea Agreement) tracks the scope of authorization granted prescribers by 21 C.F.R. § 1306.04(a); the language chosen for Defendant's Reply Affidavit does not. Choice of this language for use in the FSI and the Plea Agreement is, of course, not by accident.

Moreover, Defendant's factual admissions associated with his guilty plea cannot be contorted in a manner consistent with this about-face regarding a claimed lack of subjective intent. Most notably, Defendant admitted to prescribing addictive substances to a known addict and to a non-patient, and he specifically admitted to abusing his position of trust as a physician. When Defendant admitted his "intent to distribute [pills] outside the course of

---

[1] Thus, the Court will at the sentencing hearing consider the Government's contention that Defendant should not receive the benefit of the Sentencing Guideline provisions regarding acceptance of responsibility. (*See* Ex Parte App. at 3 n.1.)

professional practice and without a legitimate purpose," neither Defendant nor his counsel qualified his admissions in the manner now suggested by the above-quoted language. If he had, and if he had insisted on the references to "general practice" and "purposes that other doctors might not deem legitimate," the Court, consistent with *Feingold*, would have rejected his plea as inadequately supported by a factual basis.

What is clear is that *Ruan* clearly equated proof of a prescriber's intent to distribute controlled substances outside the course of a professional practice and without legitimate medical purpose with proof of intent to distribute without authorization; proof of the former is recognized as proof of the latter. Here, the Court determines that *admission* of the former is *admission* of the latter. This is consistent with Ninth Circuit precedent as expressed in *Feingold*. The Motion to Withdraw is thus based upon an untenable legal argument rather than a wholesale retraction of the underlying admitted facts, which included an admission that satisfies the requisite intent to act in a manner not authorized for physician-prescribers of controlled substances.

Thus, the Court finds no breach of the Plea Agreement.

## V.   CONCLUSION

For the foregoing reasons, the Court DENIES both the Motion to Withdraw Guilty Plea and the Government's Ex Parte Application for a finding that Defendant breached the plea agreement.

**IT IS SO ORDERED.**

DATED:  April 7, 2023

_____
HON. JOSEPHINE L. STATON
United States District Judge